Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJEEV CHOWDHRY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GOODRX HOLDINGS, INC., DOUGLAS HIRSCH, TREVOR BEZDEK, and KARSTEN VOERMANN, <br><br> Defendants. | Case No. 2:24-cv-03282-AB-AJR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL** <br><br> CLASS ACTION <br><br> JUDGE: André Birotte Jr. <br> HEARING: July 19, 2024 <br> TIME: 10:00 a.m. <br> CTRM: 7B |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-03282-AB-AJR

Rajeev Chowdhry ("Movant") respectfully submits this memorandum in support of his motion for an Order, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1) appointing Movant as Lead Plaintiff for all purchasers of common stock of GoodRx Holdings, Inc. ("GoodRx" or the "Company") between September 23, 2020 and November 8, 2022, both dates inclusive (the "Class Period"), to recover damages caused by Defendants' violations of the federal securities laws (the "Class"); and

(2) appointing The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## I.    PERTINENT BACKGROUND

This action was commenced on April 22, 2024, against GoodRx Holdings, Inc., Douglas Hirsch, Trevor Bezdek, and Karsten Voermann, ("Defendants") for violations under the Exchange Act. Dkt. No. 1. That same day, an early notice was issued pursuant to the PSLRA advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and of their option to seek appointment as Lead Plaintiff. *See* Declaration of Laurence M. Rosen ("Rosen Decl."), Ex. 1, filed herewith.

1

GoodRx operates a price comparison platform for prescription drugs which, in many cases, offers consumers access to lower prices (through discount codes and coupons) for their medications. GoodRx generates most of its revenue from contracts with pharmacy benefit managers ("PBMs") who agree to pay GoodRx a commission on prescription drug purchases made by consumers who use GoodRx's discount codes and coupons at participating pharmacies. GoodRx also generates a portion of its revenue from subscription plans like the "Kroger Rx Savings Club," which provides "access [to] lower prescription prices at" pharmacies operated by The Kroger Co. ("Kroger"). Dkt. No. 1 ¶ 2.

The Complaint alleges that throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) while Kroger accounted for less than 5% of the pharmacies accepting GoodRx discounts, Kroger was responsible for nearly 25% of GoodRx's total prescription transactions revenue (the Company's primary revenue stream); and (2) Kroger could unilaterally cease accepting GoodRx discounts, cutting off some or all of GoodRx's revenues for purchases at Kroger's pharmacies; and (3) as a result, defendants' representations about GoodRx's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *Id*. ¶ 9.

On May 9, 2022, investors began to learn the truth about the risks of GoodRx's overdependence on Kroger (including the risk that, notwithstanding the

2

Kroger Rx Savings Club, Kroger could unilaterally refuse to accept GoodRx's discounts) on May 9, 2022, when GoodRx revealed that, late in the first quarter of 2022, "a grocery chain had taken actions that impacted acceptance of discounts from most PBMs for a subset of drugs" and that this "impacted the acceptance of many PBM discounts for certain drugs at this grocer's stores."  GoodRx further acknowledged that this disruption "could have an estimated revenue impact of roughly $30 million" in the second quarter of 2022—resulting in the Company announcing disappointing second quarter 2022 revenue guidance of only about $190 million. *Id*. ¶ 4.

In the accompanying investor earnings call held that same day, Defendant Bezdek admitted that the use of GoodRx discounts at the "grocery chain" were responsible for nearly 25% of GoodRx's prescription transactions revenue.  While Defendants refused to identify the grocer by name, analysts and media outlets quickly recognized that the unnamed grocery chain was Kroger. *Id*. ¶ 5.

On this news, the price of GoodRx common stock plummeted $2.78 per share, or more than 25%, from a close of $10.75 per share on May 9, 2022, to close at $7.97 per share on May 10, 2022. *Id*. ¶ 6.

On November 8, 2022, Defendants provided further information on the severity of the revenue impact from the Kroger disruption—with the Company estimating that the "impact of the grocer issue on third quarter [prescription

3

transactions revenue] was approximately $40 million" and that the Company expected "a combined $45 million to $50 million estimated impact to prescription transactions revenue" for the fourth quarter of 2022. Defendants further acknowledged that the Company was seeking to enter into contractual relationships with pharmacies to prevent similar disruptions from occurring in the future. *Id*. ¶ 7.

On this news, the price of GoodRx common stock declined an additional $1.18 per share, or more than 22%, from a close of $5.24 per share on November 8, 2022, to close at $4.06 per share on November 9, 2022. *Id*. ¶ 8.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. *Id*. ¶ 10.

## ARGUMENT

## II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

As set forth below, Movant satisfies the above criteria, has the largest financial interest of any movant in this litigation, and is therefore the most adequate plaintiff and should be appointed as Lead Plaintiff.

**A.    Movant is Willing to Serve as Class Representative**

Movant has made a timely motion in response to a PSLRA early notice. *See* Rosen Decl., Ex. 1. Additionally, as set forth in his PSLRA certification, Movant attests that he has reviewed the complaint, adopts the allegations therein, and is willing to serve as representative of the class. *See* Rosen Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the class.

5

## B.   Movant has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group … that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 730. While the PSLRA does not specify precisely how to calculate the "largest financial interest", a movant's approximate losses in the subject securities is the best measure. *Richardson v. TVIA*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing cases).

Movant lost approximately $30,060.74 in connection with his purchases of GoodRx common stock. *See* Rosen Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in the Company's securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

## C.   Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Federal Rule of Civil Procedure Rule 23(a)

provides that a party may serve as a class representative if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that Movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant satisfies the requirements of Rule 23 is sufficient. *Cavanaugh*, 306 F.3d at 730-31. At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson*, 2007 WL 1129344, at * 4 (citing *Cavanaugh*, 306 F.3d at 730).

Movant fulfills all the pertinent requirements of Rule 23. Movant shares substantially similar questions of law and fact with the members of the class, and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-03282-AB-AJR

his claims are typical of the members of the class. Movant and all members of the class allege that Defendants violated the Exchange Act by publicly disseminating false and misleading statements about the Company and its business. Movant, as did all of the members of the class, purchased GoodRx common stock at prices artificially inflated due to Defendants' misrepresentations and omissions, and was damaged thereby. These shared claims also satisfy the requirement that the claims of the representative party be typical of the claims of the class.

Thus, the close alignment of interests between Movant and other class members, as well as Movant's desire to prosecute this action on behalf of the class, provides ample reason to appoint Movant as Lead Plaintiff.

**D.    Movant Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses**

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Movant's ability and desire to fairly and adequately represent the class has been discussed above. Movant is not aware of any unique defenses that Defendants could raise against him that would render Movant inadequate to represent the Class.

Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

Further, Movant is a sophisticated investor with approximately 25 years of investing experience. He lives in Texas and is Director of Commercial Solutions, in the construction industry. Movant holds a Master of Science in Computer Science, as well as a Master of Business Administration.

## III.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching the Class's and Movant's claims, including filing this action, reviewing publicly available financial and other documents and gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in securities litigation and class actions, having been appointed as lead counsel in securities class

actions in this District and in other courts throughout the nation. *See* Rosen Decl., Ex. 4.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable the firm to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the class; (2) approving Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated:   June 21, 2024                 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed] Lead
Counsel for the Class*

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-03282-AB-AJR

# CERTIFICATE OF PAGE LIMIT AND WORD COUNT

The undersigned, counsel of record for Rajeev Chowdhry, certifies that this brief is less than 25 pages and contains 2,046 words, which complies with the page limit of Your Honor's Standing Order Rule 7.c. and the word limit of L.R. 11-6.1.

Executed on June 21, 2024.

/s/ Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-03282-AB-AJR

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On June 21, 2024, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 21, 2024.

/s/ Laurence M. Rosen
Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RAJEEV CHOWDHRY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-03282-AB-AJR