POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant the Kalmanson Family
and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE BARSULI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GOODRX HOLDINGS, INC., DOUGLAS HIRSCH, TREVOR BEZDEK, and KARSTEN VOERMANN, <br><br> Defendants. | Case No. 2:24-cv-03282-AB-AJR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE KALMANSON FAMILY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** <br><br> DATE:  July 19, 2024 <br> TIME:  10:00 a.m. <br> JUDGE:  André Birotte Jr. <br> CTRM:  7B |

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................1

II.    STATEMENT OF FACTS ....................................................................................3

III.   ARGUMENT...................................................................................................6

    A.    THE KALMANSON FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF ...............................................................................................6

        1.    The Kalmanson Family Is Willing to Serve as Class Representative ...........................................................................................7

        2.    The Kalmanson Family Has the "Largest Financial Interest" ............8

        3.    The Kalmanson Family Otherwise Satisfies the Requirements of Rule 23 ........................................................................................9

        4.    The Kalmanson Family Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ......... 12

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................................................................................13

IV.    CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................ 10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................. 8

*In re Solar City Corp. Sec. Litig.*,
No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) .............. 10

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................... 8, 9

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ................................ 8

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ................... 8, 9

*Osher v. Guess?, Inc.*,
No. CV01-00871LGB(RNBX), 2001 WL 861694,
(C.D. Cal. Apr. 26, 2001) ................................................................................... 13

*Richardson v. TVIA, Inc.*,
No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ............. 10

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................. 11

*Tai Jan Bao v. SolarCity Corp.*,
No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ........... 10

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... 1, 12

Private Securities Litigation Reform Act of 1995 .................................. 1, 9, 12, 13

Securities Exchange Act of 1934 ...................................................................... 1, 10

**Rules**

Fed. R. Civ. P. 23 ......................................................................................*passim*

Movants Betty Kalmanson, Lawrence Kalmanson, and Shawn Kalmanson (collectively, the "Kalmanson Family") respectfully submit this Memorandum of Points and Authorities in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Kalmanson Family as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities that purchased or otherwise acquired GoodRx Holdings, Inc. ("GoodRx" or the "Company") common stock between September 23, 2020 and November 8, 2022, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.   PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  GoodRx investors, including the Kalmanson Family, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused GoodRx's stock price to fall sharply, damaging the Kalmanson Family and other GoodRx investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, the Kalmanson Family purchased or otherwise acquired 29,713 shares of GoodRx common stock, expended $1,597,950 on these transactions, retained 25,463 of its shares of GoodRx common stock, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $1,227,506.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A at *2.  Accordingly, the Kalmanson Family believes that it has the largest financial interest in the relief sought in this Action.  Beyond its considerable financial interest, the Kalmanson Family also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, the Kalmanson Family has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Kalmanson Family respectfully requests that the Court enter an Order appointing the Kalmanson Family as Lead Plaintiff for the Class and approving its selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaint in the Action, GoodRx is a Delaware corporation with principal executive offices in Santa Monica, California.  Dkt. No. 1 at 1 ¶ 2.  GoodRx operates a price comparison platform for prescription drugs which, in many cases, offers consumers access to lower prices (through discount codes and coupons) for their medications.  *Id.*  GoodRx generates most of its revenue from contracts with pharmacy benefit managers ("PBMs") who agree to pay GoodRx a commission on prescription drug purchases made by consumers who use GoodRx's discount codes and coupons at participating pharmacies.  *Id.* at 1-2 ¶ 2.  GoodRx also generates a portion of its revenue from subscription plans like the "Kroger Rx Savings Club," which provides "access [to] lower prescription prices at" pharmacies operated by The Kroger Co. ("Kroger").  *Id.* at 2 ¶ 2.  GoodRx's common stock trades in the United States on The Nasdaq Stock Market LLC under the ticker symbol "GDRX."  *Id.*

In connection with GoodRx's initial public offering on September 23, 2020, and throughout the remainder of the Class Period, Defendants continuously touted the Company's strong relationships with pharmacies as a significant element of its business plan.  *Id.* at 2 ¶ 3.  Among other things, GoodRx repeatedly highlighted the Kroger Rx Savings Club—which provides "access [to] lower prescription prices at Kroger pharmacies, including over 100 common generic medications for free, $3.00, or $6.00 price points, and savings on more than 1,000 other generic medications."  *Id.*  Critically,

however, Defendants never informed investors of the material risk that Kroger, which accounted for nearly 25% of GoodRx's prescription transactions revenue, could unilaterally refuse to accept GoodRx's discounts. *Id.*

Investors began to learn the truth about the risks of GoodRx's overdependence on Kroger (including the risk that, notwithstanding the Kroger Rx Savings Club, Kroger could unilaterally refuse to accept GoodRx's discounts) on May 9, 2022, when GoodRx revealed that, late in the first quarter of 2022, "a grocery chain had taken actions that impacted acceptance of discounts from most PBMs for a subset of drugs" and that this "impacted the acceptance of many PBM discounts for certain drugs at this grocer's stores." *Id.* at 2 ¶ 4. GoodRx further acknowledged that this disruption "could have an estimated revenue impact of roughly $30 million" in the second quarter of 2022—resulting in the Company announcing disappointing second quarter 2022 revenue guidance of only about $190 million. *Id.*

In the accompanying investor earnings call held that same day, Defendant Trevor Bezdek (the Company's Co-Chief Executive Officer during the Class Period) admitted that the use of GoodRx discounts at the "grocery chain" were responsible for nearly 25% of GoodRx's prescription transactions revenue. *Id.* at 2-3 ¶ 5. While Defendants refused to identify the grocer by name, analysts and media outlets quickly recognized that the unnamed grocery chain was Kroger. *Id.* at 3 ¶ 5.

On this news, the price of GoodRx common stock plummeted $2.78 per share, or more than 25%, from a close of $10.75 per share on May 9, 2022, to close at $7.97 per share on May 10, 2022.  *Id.* at 3 ¶ 6.

On November 8, 2022, Defendants provided further information on the severity of the revenue impact from the Kroger disruption—with the Company estimating that the "impact of the grocer issue on third quarter [prescription transactions revenue] was approximately $40 million" and that the Company expected "a combined $45 million to $50 million estimated impact to prescription transactions revenue" for the fourth quarter of 2022.  *Id.* at 3 ¶ 7.  Defendants further acknowledged that the Company was seeking to enter into contractual relationships with pharmacies to prevent similar disruptions from occurring in the future.  *Id.*

On this news, the price of GoodRx common stock declined an additional $1.18 per share, or more than 22%, from a close of $5.24 per share on November 8, 2022, to close at $4.06 per share on November 9, 2022.  *Id.* at 3 ¶ 8.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose that: (1) while Kroger accounted for less than 5% of the pharmacies accepting GoodRx discounts, Kroger was responsible for nearly 25% of GoodRx's total prescription transactions revenue (the Company's primary revenue stream); (2) Kroger could unilaterally cease accepting GoodRx discounts, cutting off some or all of GoodRx's revenues for purchases at Kroger's pharmacies; and (3) as a result,

Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *Id.* at 3 ¶ 9.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock when the truth was revealed, the Kalmanson Family and other members of the Class have suffered significant damages. *See id.* at 4 ¶ 10.

## III.   ARGUMENT

### A.   THE KALMANSON FAMILY SHOULD BE APPOINTED LEAD PLAINTIFF

The Kalmanson Family should be appointed Lead Plaintiff because it has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to its knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.*  § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Kalmanson Family satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**1.     The Kalmanson Family Is Willing to Serve as Class Representative**

On April 22, 2024, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities fraud class action lawsuit had been filed against GoodRx and other defendants, and which advised investors in GoodRx common stock that they had until June 21, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. B at *2.

The Kalmanson Family has filed the instant motion pursuant to the Notice, and has attached sworn Certifications executed by its members attesting that they are willing to

serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C at *2-3 ¶ 4, *5-6 ¶ 4, *8-9 ¶ 4.  Accordingly, the Kalmanson Family satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      The Kalmanson Family Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of its knowledge, the Kalmanson Family has the largest financial interest of any GoodRx investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest

within the meaning of the PSLRA. *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, the Kalmanson Family: (1) purchased or otherwise acquired 29,713 shares of GoodRx common stock; (2) expended $1,597,950 on its transactions in GoodRx common stock; (3) retained 25,463 of its shares of GoodRx common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $1,227,506 in connection with its Class Period transactions in GoodRx common stock. *See* Pafiti Decl., Ex. A at *2. To the extent that the Kalmanson Family possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Kalmanson Family Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.  *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014).  "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy."  *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The Kalmanson Family's claims are typical of those of the Class.  The Kalmanson Family alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning GoodRx, or by omitting to state material facts necessary to make the statements they did make not misleading.  The Kalmanson Family, like other Class members, purchased GoodRx common stock during the Class Period at prices alleged to

have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove GoodRx's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

The Kalmanson Family is an adequate representative for the Class. Here, the Kalmanson Family has submitted sworn Certifications signed by its members declaring their respective commitment to protect the interests of the Class. *See* Pafiti Decl., Ex. C at *2-3, *5-6, *8-9. There is no evidence of antagonism or conflict between the Kalmanson Family's interests and those of the Class, and the Kalmanson Family's significant financial interest demonstrates that it has a sufficient interest in the outcome of this litigation that gives it an incentive to vigorously prosecute the claims in this Action on behalf of the Class. Moreover, the Kalmanson Family has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits its choice of Pomerantz to the Court for approval as Lead Counsel for

the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, the Kalmanson Family is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this Action.

Further demonstrating its adequacy, the Kalmanson Family has submitted a Joint Declaration executed by its members—a married couple and their son—attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Pafiti Decl., Ex. D at 1-5 ¶¶ 1-8, 10-14.

### 4.    The Kalmanson Family Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing the Kalmanson Family as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Kalmanson Family's ability and desire to fairly and adequately represent the Class has been discussed above.  The Kalmanson Family is not aware of any unique

defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, the Kalmanson Family should be appointed Lead Plaintiff for the Class.

## B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in Lead Plaintiffs to select and retain Lead Counsel, subject to Court approval.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001) ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, the Kalmanson Family has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. E at 1-11.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.* at 1.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the

United States. *See id.* at 2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-11. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, the Kalmanson Family's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving the Kalmanson Family's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, the Kalmanson Family respectfully requests that the Court issue an Order: (1) appointing the Kalmanson Family as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated: June 21, 2024                                Respectfully submitted,

                                                    POMERANTZ LLP

                                                    */s/ Jennifer Pafiti*
                                                    Jennifer Pafiti (SBN 282790)
                                                    1100 Glendon Avenue, 15th Floor
                                                    Los Angeles, California 90024
                                                    Telephone: (310) 405-7190
                                                    Facsimile: (917) 463-1044

jpafiti@pomlaw.com

*Counsel for Movant the Kalmanson Family and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant the Kalmanson Family*

CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for the Kalmanson Family, certifies that this brief contains 3,462 words, which complies with the word limit of L.R. 11-6.1.

Executed on June 21, 2024.

*/s/ Jennifer Pafiti*
Jennifer Pafiti