# EXHIBIT B

**Pages 1 - 28**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge Presiding

CHANDRA VANIPENTA,                )
Individually and on behalf of  )
all others similarly situated, )
                                   )
          Plaintiff,              )
                                   )
  VS.                              )     **NO. C 23-01097 JD**
                                   )
SVB FINANCIAL GROUP, GREG W.     )
BECKER, and DANIEL BECK,         )
                                   )
          Defendants.            )
_____)

                              San Francisco, California
                              Thursday, September 14, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Proposed Lead Plaintiff Norges Bank and Sjunde AP-Fonden,
and Proposed Lead Counsel for the Class:

                    BERNSTEIN LITOWITZ BERGER,
                    & GROSSMANN LLP
                    2121 Avenue of the Stars, Suite 2575
                    Los Angeles, California  90067
              **BY:  JONATHAN D. USLANER, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Stenographically Reported by:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Reporter

**APPEARANCES:** (CONTINUED)

For Proposed Lead Plaintiff Norges Bank and Sjunde AP-Fonden, and Proposed Lead Counsel for the Class:

> BERNSTEIN, LITOWITZ, BERGER
> & GROSSMANN LLP
> 1251 Avenue of the Americas
> 44th Floor
> New York, New York  10020
> **BY: SALVATORE J. GRAZIANO, ATTORNEY AT LAW**

> KESSLER, TOPAZ, MELTZER, & CHECK LLP
> 280 King of Prussia Road
> Radnor, Pennsylvania  19087
> **BY: NAUMON A. AMJED, ATTORNEY AT LAW**

For KBC Asset Management NV and Proposed Lead Counsel for the Class:

> MOTLEY RICE LLC
> 28 Bridgeside Boulevard
> Mt. Pleasant, South Carolina  29464
> **BY: LANCE V. OLIVER**
> **CHRISTOPHER F. MORIARTY**
> **ATTORNEYS AT LAW**

> BLEICHMAR, FONTI & AULD LLP
> 1330 Broadway, Suite 630
> Oakland, California  94612
> **BY: LESLEY E. WEAVER**
> **ATTORNEY AT LAW**

For Defendant Greg W. Becker:

> ORRICK, HERRINGTON & SUTCLIFFE LLP
> The Orrick Building
> 405 Howard Street
> San Francisco, California  94105
> **BY: JAMES N. KRAMER**
> **MOLLY MCCAFFERTY**
> **ATTORNEYS AT LAW**

For Defendant Daniel Beck:

> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 2000 K. Street NW
> 4th Floor
> Washington, DC  20006
> **BY: JENNIFER S. WINDOM, ATTORNEY AT LAW**

Thursday, September 14, 2023                          1:35 p.m.

                    **P R O C E E D I N G S**

                            ---oOo---

        **THE CLERK:**  Calling civil 23-1097, Chandra Vanipenta

versus SVB Financial Group.

    Counsel, please state your appearance for the record.

        **THE COURT:**  Thank you.

        **ATTORNEY USLANER:**  Good afternoon, Your Honor.

Jonathan Uslaner on behalf of Bernstein, Litowitz, Berger &

Grossmann for Norges Bank and AP7.

        **THE COURT:**  Try to use the microphone please.

        **ATTORNEY GRAZIANO:**  Good afternoon, Your Honor.

Salvatore Graziano from Bernstein Litowitz also on behalf of

proposed lead plaintiffs Norges Bank and AP7.

        **THE COURT:**  You can use the podium one.

        **ATTORNEY AMJED:**  Good afternoon, Your Honor.  Naumon

Amjed from Kessler Topaz Meltzer & Check on behalf of Norges

Bank and AP7.

        **ATTORNEY WEAVER:**  Good morning, Your Honor.  Lesley

Weaver for KBC Asset Management, and we have two lawyers from

Motley Rice here today.

        **ATTORNEY MORIARTY:**  Good afternoon, Your Honor.

Christopher Moriarty, Motley Rice, on behalf of KBC Asset

Management.

        **ATTORNEY OLIVER:**  Good afternoon, Your Honor.  Lance

Oliver, Motley Rice, KBC Asset Management.

THE COURT: Okay.

THE CLERK: Defendants' counsel.

ATTORNEY WINDOM: Good afternoon, Your Honor. Jennifer Windom from Kramer Levin on behalf of defendant Beck.

ATTORNEY McCAFFERTY: Good afternoon, Your Honor. Molly McCafferty on behalf of defendant Becker.

ATTORNEY KRAMER: And Good afternoon, Your Honor. James Kramer also from Orrick on behalf of defendant Greg Becker.

THE COURT: Okay. So no one's asked for a stay, right? Individual defendants, you've not asked for any stays; is that right?

ATTORNEY KRAMER: I'm sorry, Your Honor?

THE COURT: Individual defendants have not asked for any stays?

ATTORNEY KRAMER: No, Your Honor. We obviously have the PSLRA stay.

THE COURT: No, I know, but stay for the bankruptcy, nothing like that?

ATTORNEY KRAMER: That's correct.

THE COURT: Okay. Let's talk about who's going to run the show.

Go ahead. Who's going to start?

ATTORNEY GRAZIANO: Your Honor, as I mentioned,

Salvatore Graziano on behalf of the proposed lead plaintiff movants Norges Bank and AP7, and I'd like to point out that we have representatives today here both Norges Bank, Beata Gocyk-Farber who's here in the audience.

THE CLERK: Counsel, can you pull the microphone closer to you please.

ATTORNEY GRAZIANO: Sure. And also representatives of AP7. Per Olofsson who's the Deputy Chief Investment Officer. Charlotta Naumon who's the head of ESG.

And today, Your Honor, our motion is for consolidation which is unopposed. Appointment as lead plaintiffs --

THE COURT: Let me ask you a question.

ATTORNEY GRAZIANO: Yes.

THE COURT: So I have four of these things I think. I've got Snook, Siddiqui, Hialeah and International -- IUOP -- IUOE, and apparently two others, Stevenson and Rossi, which I didn't relate. Now, do you know what's happening on those two that I didn't relate?

ATTORNEY GRAZIANO: Yes. I believe those two others were in front of Judge Gilliam. They were removed from state court and there's a hearing as to that matter this month I believe.

THE COURT: Oh, okay. For remand; right?

ATTORNEY GRAZIANO: Yes. Correct.

THE COURT: All right. So leaving remand -- if

they're not remanded -- I reluctantly say this -- but if they're not remanded, would I be asked to relate them again?

**ATTORNEY GRAZIANO:** Yes, Your Honor, and we believe they should be consolidated with the others, and they are brought in state court but as class actions and completely overlap with the theories of liability in this case or in these cases.

**THE COURT:** All right. Well, let's hope Judge Gilliam remands, but we'll see.

Okay. Go ahead.

**ATTORNEY GRAZIANO:** So, Your Honor, I believe today's motion is squarely addressed by the Ninth Circuit's recent decision in the *Mersho* case, which is 6 F 4th 891 --

**THE COURT:** I'll tell you what. The law part I don't need. Just tell me why -- first of all, here's what I'd like to know. Why do you need a group? I mean, either one of the companies -- so one is AP7, right? How do you say the other one? Norges?

**ATTORNEY GRAZIANO:** Norges Bank.

**THE COURT:** Norges. All right.

**ATTORNEY GRAZIANO:** Norges Bank has a $138 million loss under LIFO. AP7 has a loss of $23 million under LIFO.

**THE COURT:** So either one is perfectly fine in terms of -- well, Norges is presumptively the lead plaintiff if you just did it as an individual.

So why do we need a group?

**ATTORNEY GRAZIANO:** Your Honor, I don't believe you need a group, but I think the issue here is that Norges Bank requested a partner in this case because they have a history of collaborating with other large institutional investors. Indeed, they collaborate with each other on issues such as ESG investing, and they believe having two lead plaintiff movants together as a group will function for a stronger recovery for the class. There will be a diversity of thought. A diversity of input.

So we as the plaintiffs' counsel certainly did not advocate for any kind of grouping in this case. They said to us we would like a part. AP7 said to their counsel, who else is moving?

But Norges Bank who -- our adversary says was almost certainly, to quote their reply brief, going to be the movant as a single movement, requested a partner.

And I think the law as indicated in the plain language of the PSLRA which talks about an individual or a group; but more importantly as filled out by the Ninth Circuit's repeated decision --

**THE COURT:** Let me just jump in. Yes, you can ask for a group under the PSLRA. I just -- consider this a marker on the table. The reason I'm hesitating is it looks to me like you're asking for now two lead, colead counsel, right? Your

firm and somebody else. And I'm just blanking on the name. Who is the other one?

ATTORNEY GRAZIANO: Kessler Topaz who's here.

THE COURT: And you know I'm probably not going to stop you from having a group because the statute clearly contemplates it and this is not a Stitch Fix situation. Stitch Fix, my prior case, dealt with aggregation in a different context, which is not present here.

But I just want to tell you if we get to the fees portion of this, I'm not awarding double fees. Okay? I don't think you need two lead counsel. If this were a Rule 23 case, I would not even consider doing that.

Under PSLRA there's slightly different standards, but I want you to be aware of that. Okay? I'm not going to have two heads on the body just because the plaintiffs want to tag team.

Now it seems to me that Norges is perfectly fine going forward. They're hardly an inexperienced plaintiff from what I've seen. So I don't know why they would feel like they needed, whatever you said, support. But am I clear about that?

ATTORNEY GRAZIANO: Yes, absolutely clear. And I would like to make a couple points about that. And, number one, this is Norges Bank first time seeking a class leadership role. It has significant securities litigation experience but always as an opt-out individual.

THE COURT: They are not new to the parties securities

litigation.

ATTORNEY GRAZIANO: I don't disagree. But I want to make a perhaps more direct important point to what Your Honor raised.

One of the things they've already done is vigorously negotiated a fee schedule with us that will bind Kessler Topaz that is very low. So there's not going to be double fees even if we were in the case alone because the fee percentages that they negotiated that we have to live with are very low. Lower than what would be the norm. Clearly much lower than the Ninth Circuit's 25 percent benchmark by far. So I want to make the point --

THE COURT: It's below the 25 percent?

ATTORNEY GRAZIANO: Well below.

THE COURT: By the way, not a benchmark. It's a guideline. I want to get people to stop saying "benchmark" because it's not a benchmark. It's a guideline.

But it's below the 25 percent guideline?

ATTORNEY GRAZIANO: Well below. I'm sorry. I thought I was quoting the Ninth Circuit with that phrase "benchmark," but I could be wrong.

THE COURT: You are, but that's wrong. It's not a benchmark. In other words, it's not all things being equal, that's what you get. Each case is *sui generis* and 25 percent is a good guideline. It's not a mandatory benchmark or

requirement.

But, anyway, you think it's below that?

**ATTORNEY GRAZIANO:** I know it's below that. It's well below that.

**THE COURT:** All right.

**ATTORNEY GRAZIANO:** The other point I wanted to make is so there's a limit right there. They've also asked us to keep careful track of our work with Kessler Topaz, to divide our responsibilities so that there's no duplication; and even if there were duplication, ultimately it won't matter because the percentage will be low, as I mentioned.

The other point I wanted to make is we will be facing I'm sure in this case six, eight major firms on the other side. This case I think is going to be, you know, vigorously litigated.

**THE COURT:** Six or eight? There are only two of them there right now.

**ATTORNEY GRAZIANO:** I think -- I don't think they would disagree with me in fact and maybe we can hear from them on that one question. But there are counsel for underwriters. There are counsel for individuals. There are counsel for the board.

It's going to be quite a significant litigation, Your Honor. There are many offerings in this case where billions of dollars were raised. All of those offerings give

rise to potential Section 11 liability claims.  This is a significantly large case.

I know we quickly left the issue of groups, and I don't disagree with it, but I just did want to point out, you know, what is the issue with groups perhaps in Stitch Fix or cases pre-*Mersho*.  There's a concern that these people were put together by counsel --

**THE COURT:**  I'm okay with that.

**ATTORNEY GRAZIANO:**  We don't have any of those metrics here.

**THE COURT:**  Yeah.

**ATTORNEY GRAZIANO:**  So, you know, with all of that, Your Honor, I'm more than happy to rest on our papers.

**THE COURT:**  All right.  KBC, I mean you come in third.  Who's going to speak for KBC?

**ATTORNEY OLIVER:**  Yes, Your Honor.  Lance Oliver.

Your Honor, it --

**THE COURT:**  You come in third.  So Norges is about 138 million, AP7 is about 23-and-a-half million, and you're at 8.8 million in terms of losses.

**ATTORNEY OLIVER:**  That's correct, Your Honor.

What I want to do is I want to start with something that the Court may not be aware of and that counsel for Norges and AP7 didn't address.

**THE COURT:**  Okay.

**ATTORNEY OLIVER:** There are three bank failure cases pending in this country now. Your Honor is probably aware of that. Signature Bank, First Republic, and this case.

Interestingly, the same two law firms that are seeking lead plaintiff or lead counsel roles here are also seeking lead counsel roles in those cases but with different clients.

And to Your Honor's point in the Signature Bank case, AP7 is moving for lead plaintiff but it's chosen two law firms. These two law firms, which leads us to concerns about lawyer-driven litigation. That's where we are. It's not something that came out in the papers because I believe that hadn't fully developed by the time the papers were filed. But those are the very concerns that this Court raised in Stitch Fix and raised in its other case --

**THE COURT:** Well, let me just jump in. Not entirely. Let me just make two comments and you can respond to them.

First, in Stitch Fix it was a group that was literally stitched together by the lawyer after the issue with the company happened. That lawyer called around, made the introductions, put it together, and presented to me, and I said you can't do that.

Here it's a preexisting. AP7 and Norges are not strangers to each other. They've known each other, according to the declaration that's unrebutted that I have. Worked together. They certainly have by far, individually and as a group, the

largest claimed loss.

Now with respect to the lawyer's side, if this were a Rule 23, we can explore that. And one of the things that I am and other judges, and I'm not alone by any means, are very concerned about is the monopolization of lead counsel roles, and the lack of diversity sometimes that that causes.

In Rule 23 context I can do a lot about that. In PSLRA my hands are much more tied. The questions are, as you know: Is the plaintiff adequate? And I don't see any indication they're not. And if so, they are and have the largest loss, they get to go run the show and they get to pick their lawyers. My ability to determine who the lawyers are is quite limited.

Now, as I said earlier, it does not mean anybody is going to get a windfall or double recovery at the expense of the class should we get to the point. I'm going to police that and I'm empowered to police that very carefully, but I have very limited ability to determine the choice of counsel by an adequate, largest loss party; right?

**ATTORNEY OLIVER:** I agree with you, Your Honor. Under *Cohen* your ability to choose counsel for the plaintiff is limited, but your ability to press and look into the evidence about the adequacy of the plaintiff because of their relationship with the lawyer is not so limited.

You know, counsel started out talking about *Mersho*, and I thought that their response was a complete misreading of the

case. KBC is not contending that *Mersho* changed anything here.

In fact in the Ninth Circuit in *Mersho*, they actually said we encourage district courts to consider all of these things.

So whether we're at step two or step three of that analysis, the Ninth Circuit has said that Your Honor has the power to look into the evidentiary record and see what's really going on. Is this a lawyer-driven group or is it not?

Now --

**THE COURT:** Well, that power -- your words not mine -- but that power is directed only to evaluating the adequacy of the plaintiff. That's the only inquiry I have. That's my one sort of gatekeeping discretionary point.

**ATTORNEY OLIVER:** And I absolutely agree with that.

**THE COURT:** How are these two plaintiffs inadequate?

**ATTORNEY OLIVER:** So let me start first with the concept that a client who's familiar with securities litigation and has $138 million loss somehow needs a partner as lead plaintiff. Okay. At step one -- well, step two of the analysis that raises a question in my mind. I think it should raise a question in the Court's mind.

**THE COURT:** Yeah. But the PSLRA expressly says groups can apply. What's wrong with that?

**ATTORNEY OLIVER:** Well, the question is why did such a well qualified plaintiff think it needed another client partner and is that in the best interest of the class?

**THE COURT:** No, I understand. My point is Congress has already determined that groups can apply. So Congress has in effect said you need not look past the fact that two people -- two entities can team up.

So if the statute grants them that opportunity, why am I -- how am I to gainsay that?

**ATTORNEY OLIVER:** Your Honor, I actually disagree. I think the statute says that groups can -- I agree groups can be there. The PSLRA says that's okay. So --

**THE WITNESS:** Let me just jump in and read to you 15 United States Code, section 78U-4(a)(3)(B), as in boy, (iii)(I): Quote, "groups of persons," close quote, may collectively serve as lead plaintiff.

**ATTORNEY OLIVER:** No, disagreement with that, Your Honor. What I'm --

**THE COURT:** You just told me you disagreed with it.

**ATTORNEY OLIVER:** Well, Your Honor, you made several statements, Judge. I was getting to the part I disagree with.

**THE COURT:** All right. Go ahead.

**ATTORNEY OLIVER:** I agree with you. KBC has never contended that groups cannot be lead plaintiffs. KBC does that too. It's permitted under the PSLRA.

But what *Mersho* says and what this court -- when I say this court, I mean Your Honor, but also I mean your colleagues in this district. What your colleagues in this district and

Your Honor and the Ninth Circuit has said is, yes, groups are permitted. That answers the questions of can they be lead plaintiff, not should they be lead plaintiff.

And in *Mersho* the Ninth Circuit was very clear that the should they be lead plaintiff is something that the courts have all the discretionary power they need to look at that 23(a) adequacy issue; and if the Court determines that there's evidence that the lawyers have in fact come up with a three-for-one deal to go out and get all of the bank cases and that that is a lawyer driven thing, then at that point the clients have allowed the lawyers to do something that is at odds with the goal of the PSLRA.

**THE COURT:** Let me just say this. Even if I took your point of view just for our discussion here and I said that they -- Norges and AP7 couldn't group, then Norges is going -- there's no path that leads to your client being the lead. That's what I'm trying -- I don't understand. I appreciate kind of the public service of you raising the concern, but I know you're not here for that. There's just no path that leads to KBC.

Both of these clients, AP7 and Norges on their own individually, dwarf your client's loss.

**ATTORNEY OLIVER:** That's true.

**THE COURT:** There's just no path that gets to you unless you can tell me one.

**ATTORNEY OLIVER:** Your Honor, what I see in the cases that this Court has authored, your colleagues and yourself, is that when two plaintiffs come together and the group is rejected and they don't ask for individual appointment, the courts have uniformly rejected the notion that it should then step in and allow them to be appointed individually. Every court that I'm aware of to address that issue has taken that exact position.

**THE COURT:** Well, but I wouldn't be doing that. The statute says the plaintiff with the largest loss is the presumptive lead plaintiff unless shown to be inadequate.

So if I said the group is a no fly, the statute says, okay, who's the largest single loss plaintiff, and that's Norges. I mean, it's not me. It's almost like an algorithm.

**ATTORNEY OLIVER:** And I understand that, but what the cases have actually done in the past with that exact scenario is to say, well, that's fine but since you did not ask, I am going to the next lead plaintiff who qualifies and in this case that's KBC because these two plaintiffs have grouped themselves together.

And, quite frankly, in their initial moving papers, they didn't address these precedents, which I thought was odd. I thought, okay, we know that the Northern District of California has this history of cases and Norges Bank and AP7 said nothing about those cases.

**THE COURT:** Yeah, but I think you're missing an important quality at least in my Stitch Fix case. They were aggregated to be the big plaintiff. That's not the case here. Neither of these companies need each over to be the big company. They're both number one and two on their own merits.

So the concern in Stitch Fix was they wanted to beat out other people, which they could not do one on one. They needed to do it four on one. That's not what's happening here.

**ATTORNEY OLIVER:** I do understand that, Your Honor. And in some of the cases, not Stitch Fix, but in some of the other cases there's actually been -- I think it was Cloudera actually -- there has been the Court going step by step. You know, this group doesn't work. Okay. I'm going to the next one. I'm going to the next one. So I do think that, you know, that has been the approach.

And really what happens if the courts don't take that position, is it encourages lead plaintiffs to take this wait-and-see approach, you know, like, hey, I'm not going to address this issue. I'm not, for example, going to elucidate the court about our past relationship.

We did this chart in our moving papers, and I know Your Honor has seen it, where we compared the previous declarations that were insufficient with the declaration here. And, honestly, we don't know anything about Norges Bank and AP7's previous relationship. What we know is they were aware

of each other.  They're from different countries, and they might have been in each other's offices with regard to ESG. But we don't know if any of those people have anything to do with this group.  We don't know if any of those people have talked about securities fraud litigation.  We don't know any of those things.  We don't know how often they met or how deep this relationship goes.  The declaration itself suggests that it's not very deep at all.  That's why it's light on detail.

THE COURT:  It may be not deep.  Let's just take that point for discussion.  I'm not saying one way or the other as a matter of fact, but it does predate the litigation.

Really the concern is when a lawyer is at home, reads the newspaper, and starts dialing for clients.  There's no -- that's what happened in Stitch Fix and that's why I said you can't do that.  Lawyer literally said company A meet my friends at company B.  I'd like you two to work together.  There's no evidence here that that happened.  I haven't seen any.

ATTORNEY OLIVER:  The analogy of dialing for clients I'm not saying that happened.  I don't think --

THE COURT:  But that's literally what happened in Stitch Fix.  The lawyer called around and put a group together on his own.  He was the hub and they were the spokes.  I don't see any -- what do you know here that suggests this happened here?  Do you know anything?

ATTORNEY OLIVER:  I don't think there's any

difference, Your Honor, in that scenario in a scenario where a law firm who has an existing client relationship pushes two clients together for some reason that is a motive of the lawyers, not the clients. It doesn't matter that they're not out there calling the lawyers. They could have this existing relationship.

What matters is where did that relationship come from and why is it happening? And here, other than what Mr. Graziano has said that Norges Bank thought it needed a partner, which in my mind raises an adequacy consideration anyway if it's got $138 million loss, why does it need a partner?

That's still lawyer-driven litigation if the lawyers are suggesting to their clients that they group up for reasons that aren't related to this case. Right? For reasons that are related to going out and getting Signature Bank or going out and getting First Republic as a case.

The other thing that's worth noting is the first --

THE COURT: If I may jump in.

ATTORNEY OLIVER: Sure.

THE COURT: It will be the last time I say it because I know you get it, but the reason that was a problem is in Stitch Fix they could only be the lead plaintiff if they did that. That's not the issue here.

So when you take that out, as your colleague was just suggesting, the reason that they were grouping together was for

shared interest, coficiencies, common experience, maybe share the management duties so it doesn't all align on one party. In other words, totally legitimate factors not trying to game the PLSRA to be the lead horse.

**ATTORNEY OLIVER:** And I understand that, Your Honor. The way I looked at it was a little different. I understand the Court's precedence about aggregating for losses; but when clients aggregate for losses, it's at least to get the lead plaintiff position. It's at least a rational motivation. You understand why the client might have that interest. Right?

In this case we still don't know why the client has an interest in a group. The declaration itself was very vague and I'll use a specific example. They say, oh, groups achieve great results. And I kind of laughed because I read that and I said, sure, you cited a lot of cases in which groups achieved results that were good. But that doesn't mean they achieved good results because they were groups. They could have achieved good results because in spite of the fact that they were groups or they could have achieved good results and been completely inefficient, which is something here.

We have a lead plaintiff ready and willing to serve. We have three lawyers and that's it. We got eight people on this side who have come to this, and that's all a charge for the class. Right? And there's no evidence that that type of overstaffing is going to discontinue during the litigation.

**THE COURT:** Well, here's the issue. It may be charged to the class. Whether the class pays it is up to me, and that's the marker I've put on the table.

**ATTORNEY OLIVER:** Certainly.

**THE COURT:** And I can assure you, and if you look at my prior orders, you can assure yourself, I do take that task seriously.

Let me ask this. Was it Mr. Graziano?

**ATTORNEY GRAZIANO:** Yes, Your Honor.

**THE COURT:** All right. Your colleague here says Norges is too big, too smart, too rich, and too experienced to need a buddy and there must be some reason other than the merits about why this is happening.

**ATTORNEY GRAZIANO:** Yeah. So at this stage they would have to come forward with evidence. And what my colleague said is he has considerations. He has questions. That's not evidence.

This was Norges' decision, not ours. We had no lawyers incentive to put AP7 and Norges together. It's ironic that KBC is making this argument. They've moved as a group 13 times in securities cases and we put that before Your Honor in Exhibit B to our reply brief.

The institutions, unlike the lawyers or the judges, prefer groups. A lot of them do. KBC does. Norges does. AP7 does. It's not our choice to make. We're not driving the show here.

They are.

That's precisely what the Ninth Circuit says. The concern about the groups is will the lawyers be controlling the group, but here it's the client saying, no, we want a partner and you have to live with it and you have to live with our very aggressive fee schedule, and that's all that's going on.

THE COURT: Well, your colleague is I think coming close, at least my ear, to saying, even though the statute expressly authorizes groups, as it does -- I read that to you -- there's something inherently suspicious about groups that kind of puts adequacy immediately into doubt.

Is that something you agree with?

ATTORNEY GRAZIANO: No, it turns the law on its head. It's not what Congress wrote. It's not what the Ninth Circuit said. The Ninth Circuit, in fact in *Mersho*, not only made that decision on mandamus but then dropped a footnote saying there's particularly problematic considering in *Mersho*. The group that was rejected also had the member with the single largest loss. Here we have that, you know, without any question with Norges Bank.

So, you know, unfortunately, Your Honor, there's just no -- there's no truth to what my adversary is saying on this issue. It's rebutted by the facts in this case before the Court, which the Court has to look at in stage two just based on the pleadings before Your Honor.

He would have to come forward with evidence. He admittedly has none, but it's also rebutted by his client's own behavior partnering 13 times in securities cases as lead plaintiff.

It is because these large institutions are accustomed working together. They worked together in coming up with ESG reform. They're on the same task force. They are collaborators and they want to collaborate in this case because they think that will lead to the best results in this case.

THE COURT: And let me ask you this and don't read anything into this. I'm just curious. Are you going to be lead counsel on those two other bank cases?

ATTORNEY GRAZIANO: Okay. So I don't know if we're going to be appointed or not. I'm not working on those cases. Norges Bank is not working on those case. So the relevance of --

THE COURT: Your firm has asked to be lead counsel in both of those other cases?

ATTORNEY GRAZIANO: Yes, but our firm is lead counsel with Mr. Lance in two cases that I'm working on. We are lead counsel with him in Qualcomm in the Southern District of California. We are lead counsel with him against Abbott in the Northern District of Illinois. There's overlap. That happens. We're not in some cabal with him, and we are not in a cabal with them. And it's, frankly, a little unfair for him to

say --

**THE COURT:** It's not really an issue of cabal but it is, you know, there is a problem, as I alluded -- as I mentioned. I didn't allude to it. I mentioned it that, you know, the world is full of fine law firms and there is some benefit to sharing the wealth in terms of lead counsel positions.

Now, as I said in Rule 23 I actively pursue that as do some of my colleagues. I'm not alone in this, but I mean does it seem right that one firm would have lead counsel status in all three leading national bank cases?

**ATTORNEY GRAZIANO:** So we're now talking about law firms and not lead plaintiffs, right --

**THE COURT:** No. Law firms.

**ATTORNEY GRAZIANO:** -- because the law firms are selected by the lead plaintiffs and there we have to live with the Ninth Circuit's thinking in *Cavanaugh* which it gives the lead plaintiffs the right to choose the law firms.

Is it unfair? There are many cases that our firm is not involved with. But many years ago in 2005 I decided to come to my firm now because I said that firm is getting lead in a lot of cases. I want to work for them and that's why I went to my firm because they're very successful and this is what we do. And I don't think --

**THE COURT:** That actually -- please don't get hung up

on this.  That's the problem.  This is the incumbency problem. It's a problem in MDL litigation, multidistrict litigation. It's a problem under Rule 23 where you look at the experience -- once you've done it, it's almost like a network effect through time.  Once you've done it, you just build up a network and an incumbency advantage that's very hard for new firms, different firms, firms that, you know, have different lawyers and different experience levels to break into.  That's the issue.

And in the PSLRA context, I just don't think I can do much about it.  So in that sense, as I said, I was just interested in your thoughts on it.

ATTORNEY GRAZIANO:  I think *Cavanaugh* said maybe if they're picking a first-year lawyer, then maybe the court might be able to do something about it.  But here --

THE COURT:  I'm not questioning competency.  Cavanaugh said that with respect to if you get someone who's been 90 minutes out of law school, maybe you should think twice to let a lead plaintiff to choose that person because they can't handle it.

That's not a question here.  You all are very accomplished.  You all can handle it.  That's not the issue. The issue is again it's the same firm again and again and again handling it.  That's the issue.

ATTORNEY GRAZIANO:  I mean, I don't have a response to

that other than we are humbled to represent Norges Bank. They didn't have to pick us. We were delighted when they chose us, and we'll work incredibly hard to do the best we can for the class.

THE COURT: I'll decide this, but let me just going forward so, whoever's lead counsel, let's assume just because you're there for a moment, you want to do a consolidated complaint?

ATTORNEY GRAZIANO: Yes.

THE COURT: All right. And then how long do you think that would take?

ATTORNEY GRAZIANO: 45 days.

THE COURT: 45. Okay. And then we're off to the races?

ATTORNEY GRAZIANO: They will have input on the schedule but, yes, we will be off to the races.

THE COURT: Okay. And we're missing a bunch of defendants right now.

ATTORNEY GRAZIANO: Yeah. I don't think they're all represented today, but I defer to my colleagues.

ATTORNEY KRAMER: Jim Kramer, Your Honor.

Yes, Your Honor. There are a number of defendants who are not here, but as typical in these cases -- I actually worked with Mr. Graziano in the past -- we will, if he's appointed, we'll negotiate a reasonable briefing schedule and we will

present it to the Court for approval and, of course, we'll coordinate with all the other defense counsel to make sure everyone's on board.

THE COURT: Okay. Anything else, defendants?

ATTORNEY KRAMER: No, Your Honor.

THE COURT: Plaintiffs?

ATTORNEY GRAZIANO: No, Your Honor.

THE COURT: Thank you very much. Thanks for coming in.

(Proceedings adjourned at 2:06 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, September 19, 2023

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter